MARRI DERBY (107209)
marri@marriderbylaw.com
23 Corporate Plaza Dr., Ste 150
Newport Beach, CA 92660
Telephone: (949) 478-5084
Fax: (949) 608-7034

Attorney for Defendant TYRONE RYE

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    *Plaintiff,*<br><br>v.<br><br>TYRONE RYE<br><br>*Defendant.* | Case No.: 8:11-CR-00148-JVS<br><br>**REPLY TO GOVERNMENT'S OPPOSITION TO DISCLOSURE OF GRAND JURY MATERIALS**<br><br>Date: June 24, 2014<br>Time: 3:00 p.m.<br>Judge: Hon. James V. Selna |

    Defendant Tyrone Rye, by and through his counsel of record Marri Derby, hereby replies to the government's opposition to his motion to disclose grand jury materials.

Dated: June 10, 2014                     Respectfully submitted,

                                                 /S/
                                        MARRI DERBY
                                        Attorney for Defendant
                                        TYRONE RYE

## REPLY MEMORANDUM

The Government argues Defendant's motion should be denied because he has failed to cite any facts that suggest government misconduct is a possibility. The Government argues that Defendant relies upon speculation and surmise.

Disclosure is permissible when (1) "the material . . . is needed to avoid a possible injustice in another judicial proceeding"; (2) "the need for disclosure is greater than the need for continued secrecy"; and (3) "the[] request [for disclosure] is structured to cover only material so needed." *Douglas Oil Co. of Calif. v. Petrol Stops Nw.*, 441 U.S. 211, 222 (1979); accord *United States v. Moussaoui*, 483 F.3d 220, 235 (4th Cir. 2007). Courts must conduct a fact-specific inquiry to determine whether disclosure is appropriate. *United States v. Sells Eng'g, Inc.*, 463 U.S. 418, 445 (1983).

Because grand-jury proceedings enjoy a presumption of regularity, *Hamling v. United States*, 418 U.S. 87, 139 n.23 (1974), the movant must make "a strong showing of a particularized need." *Sells Eng'g, Inc.*, 463 U.S. at 443; accord *United States v. Silva,* 745 F.2d 840, 846 (4th Cir. 1984). This generally requires a showing "'that the grand jury materials contain information which is absolutely necessary, rather than simply beneficial to [his] action, and that the information contained therein could not have been obtained through normal discovery channels.'" *Sun Dun Inc. of Wash. v. United States*, 766 F. Supp. 463, 467 (E.D. Va.1991) (quoting *Lucas v. Turner,* 725 F.2d 1095, 1102 (7th Cir. 1983)).

Defendant agrees that conclusory or speculative allegations about flaws in the grand-jury proceeding are not enough. See *United States v. Chase*, 372 F.2d 453, 466 (4th Cir. 1967) (holding that the "mere possibility" of inconsistent testimony is not sufficient to show a particularized need). Nor is an "[i]nvocation of general constitutional rights," *United States v. Loc Tien Nguyen*, 314 F. Supp. 2d 612, 616 n.6 (E.D. Va. 2004), or a "broad-based concern for . . . pre-trial preparation," In re Grand Jury Proceedings, 503 F.

Supp. 2d 800, 804–05 (E.D. Va. 2007); accord *United States v. Stroop*, 121 F.R.D. 269, 275–76 (E.D.N.C. 1988). Finally, a recitation of concerns that arise in every criminal case is insufficient. *Sells Eng'g, Inc.,* 463 U.S. at 443.

Here, Defendant is not on a "fishing expedition" arguing the mere possibility of inconsistent testimony, or generally invoking constitutional rights, or making broad based concerns for trial preparation.   Defendant has presented evidence that establishes that the witnesses in this case have been accused of perjury and hiding evidence regarding this very investigation.  The allegations surrounding the Black Flag investigation are serious and hardly something that arise in every criminal case.  Many of the witnesses involved in this investigation have obtained counsel and have testified in *People v. Scott Dekraai* (12ZF0128), (DEKRAAI) (See the court docket, Exhibit D).  The evidence presented by Defendant thus far goes beyond mere speculation and surmise.  In addition, Defendant offers the following evidence in support of his motion:

Discovery produced by the Government in this case Bate Stamp:  Prod1_M008109 thru Prod1_M008122, attached hereto as Exhibit H.  Exhibit H is a report written by Detective Gallardo (GALLARDO) of the SAPD.  This report is instructive in that it includes several of the defendants in this case and several of the witnesses that have testified in DEKRAAI, including Informant Oscar Moriel (MORIEL), and SAGTF Deputies TUNSTALL, GARCIA, and Detectives RONDOU and FLYNN.  Informant MORIEL is used by members of the SAGTF as foundation for the understanding of the alleged Mexican Mafia enterprise.

Reporters Transcripts of the testimony of GARCIA taken on May 6, 2014, during the DEKRAAI hearing, is attached hereto as Exhibit I.  At pages 3399 and 3414, GARCIA admits to moving targeted inmates at Orange County Jail next to Informants MORIEL and PEREZ, at the request of SAGTF members, including TUNSTALL, in order to obtain information.  GARCIA admits to placing inmate Leonel Vega (VEGA) (mentioned in Exhibit H) next to MORIEL (in direct violation of *Massiah*).

Reply to Government's Opposition to Disclosure of GJ Materials

In *United States v. Sampol* (D.C. Cir. 1 980) 636 F.2d 621, an informant was placed on probation with the condition that he spend six months in jail and provide the government with information about criminal activity. Although the government did not direct the informant to obtain statements from a particular person, the informant faced substantial jail time if he did not provide satisfactory information. The informant received statements from a defendant, which he then shared with law enforcement. Thereafter the informant was told not to initiate any further conversations with the defendant. The statements were introduced at trial. (*United States v. Sampol*, supra, 636 F.2d at pp. 630-637.) The D.C. Circuit Court of Appeals found that the informant obtained statements from the defendant in violation of *Massiah*, even though the informant was not told specifically to elicit them. (Id. at pp. 637-638.)

While the informant in *Sampol* did not directly question the defendant, he obtained the information through his "ability to 'ingratiate' himself with criminals" and encourage their confidences. (*United States v. Sampol*, supra, 636 F.2d at p. 638.) Because the government was aware of the informant's ability and need to elicit information from criminals, it was irrelevant that the government did not direct the informant towards the defendant or a particular inmate. *(Ibid.)* By giving the informant a powerful incentive to bring back incriminating statements from inmates, the government "trolled in the jail, using [the informant] as bait, and was ready to net any unwary inmate who rose to the lure." (*Ibid*.)

The custodial informant program used by the Government here is far more egregious than that used in *Sampol*. Here, the informants were offered distinct promises and incentives to gather information; they were deliberately placed next to targeted inmates; and were told what information was desired.

On pages 3447-3463 of exhibit I, GARCIA is questioned about a tape that was just played in court. The tape contains evidence of flagrant violations of DOJ informant usage policies and flagrant *Brady* and *Massiah* violations. [Counsel for Defendant is in the

Reply to Government's Opposition to Disclosure of GJ Materials

process of obtaining a copy of the tape and a transcript of the tape.  Once obtained, counsel will provide to the court and all parties.]  News reporter Scott Moxley was present in court when GARCIA was testifying and when the tape was played.   A copy of the resulting news article from the OC Weekly dated June 5, 2014 is attached hereto as Exhibit J.  The following excerpts are particularly enlightening:

> "Detective Flynn and Orange County Sheriff's Department deputies Ben Garcia and Bill Grover met with Moriel. There was no cop chest-thumping this time. All the players were now teammates. "You're doing stuff for me, and then I'll be doing stuff for you," Flynn told the sociopath. "You'll get maximum consideration [in your own case] for everything you do. You do a lot, and we do a lot. You do little, and you get a little. . . . Understand?"
>
> "Yeah, I understand," replied Moriel." [1]

> "…the SAPD officer assured the informant his mission and reward will never be open to outsider inspection. "This [deal] just goes in my file, in my safe at the police station, and no one has access to it," Flynn said.
>
> Moriel responded, "Good. . . . This is important."[2]

> "I want fresh chitchat from [inmate and homicide suspect Isaac Palacios]," Flynn told Moriel. "I'm going to put you on that."

---

[1] On page 3456 of Exhibit I, Sanders asks GARCIA, "At some point Flynn says, and this is documented at page 3: 'You will get maximum consideration for everything you do.  You do a lot, and we do a lot.  You do a little, and you get a little.  You have already done a lot, all right, but you are looking at a lot, so we need a lot. Understand?' Do you remember that on the tape?"

[2] On page 3455 of exhibit I, Sanders asks GARCIA, "So at page 2…Detective Flynn said, 'Well, let me tell you this right now.  This goes in a file that I have for you that gets locked in a safe, but no one but I have access to it, and it never comes out.' Okay. Do you remember that in the tape when you heard it a few moment(s) ago?" And a few questions later, Sanders asks, "Detective Flynn goes on to say, 'This is something that is needed for the federal stuff that Tony is doing.' Do you remember hearing that?"

Reply to Government's Opposition to Disclosure of GJ Materials

>According to new evidence, the killer hoped his work would win him an off-the-books payoff of $50,000 in public funds, the expunging of his lengthy criminal rap sheet and a recommendation by law enforcement to enter the U.S. military.
>
>"That's good shit," a satisfied Moriel said.
>
>Grover replied, "You want to legally kill some people, huh?"
>
>"Yeah I want to go. I want to go fight, if that's possible."
>
>Detective Flynn said, "It's, uh, much nicer when it's Uncle Sam behind you on it."
>
>"That's what I figured," said Moriel.
>
>Replied the cop, "Then, you know, you get away with it."
>
>"That's cool."
>
>Flynn recommended the Army and observed, "Put your fucking hand up, and bam! You know you're on the way."
>
>Moriel didn't hide his excitement, but Flynn reminded him "the sooner" he obtained alleged confessions, "the better" his chance for reward.

The need to protect the Defendants' constitutional rights outweighs protecting the secrecy of the grand jury proceedings. Courts have long recognized several distinct interests served by safeguarding the confidentiality of grand jury proceedings: (1) the protection of witnesses should the pre-indictment proceedings be made public; (2) the risk that those about to be indicted may flee or influence grand jurors to vote against the indictment; and (3) that persons accused and subsequently exonerated are not held up to public shame or ridicule. *Douglas Oil Co.,* 441 U.S. at 219 (1979*); Matter of Grand Jury Proceedings*, 942 F.2d 1195, 1198 (7th Cir. 1991). As the considerations justifying grand jury secrecy become less relevant, the party requesting a need for the grand jury materials will have a lesser burden in showing justification. *Douglas Oil Co*., 441 U.S. at 223.

Reply to Government's Opposition to Disclosure of GJ Materials

Here, none of the interests in favor of grand jury secrecy are applicable. The witnesses in this investigation have already publicly testified in DEKRAAI. Consequently there is no issue of witness protection. This matter is three years post indictment, those indicted are in custody and unable to flee and the grand jurors have already voted to indict. If there were people who were accused and subsequently exonerated at the grand jury, the court can order the Government not to disclose evidence relating to that.

Alternatively, if there is any doubt as to whether the government possibly presented perjured testimony, omitted exculpatory evidence, and introduced evidence in violation of *Massiah*, Defendant respectfully submits that the Court should conduct an in camera review of the grand jury transcripts. Courts often have utilized this approach when deciding whether to disclose a grand jury transcript. *See e.g., United States v. Hickey*, 367 F.3d 888, 895 n.5 (9th Cir. 2004) (district court reviewed the grand jury transcripts in camera to determine whether there was sufficient evidence to find probable cause for the indictments); *United States v. Foster*, 128 F.3d 949, 951 (6th Cir. 1997) (defendant identified the information sought with sufficient particularity to trigger his right to *in camera* review).

## CONCLUSION

Defendant has provided this court with evidence that the Black Flag investigation has been tainted with informants and witnesses who have violated the Constitution. The evidence goes far beyond mere speculation and surmise.

The evidence in Ojeda et al is massive. The evidence in DEKRAAI is massive (507 page motion with over 22,000 pages of exhibits and over 30 days of testimony). Counsels in this case are all appointed through CJA and have been directed to be very cognizant of limited CJA funds. It would be exceptionally cost effective to review the requested Grand

Jury materials and then tailor the review of the DEKRAAI discovery accordingly. Cost effectiveness alone justifies disclosure over a need for continued secrecy in this matter.

Consequently, disclosure is required because (1) "the material . . . is needed to avoid a possible injustice in [this] judicial proceeding"; (2) "the need for disclosure is greater than the need for continued secrecy"; and (3) "the[] request [for disclosure] is structured to cover only material so needed." *Douglas Oil Co. of Calif. v. Petrol Stops Nw*., 441 U.S. 211, 222 (1979).

Dated: June 12, 2014

                                          Respectfully Submitted,

                                          __/s/_____
                                          Marri Derby
                                          Attorney for Defendant Rye